UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

SECURITIES AND EXCHANGE §
COMMISSION §
§   CIVIL NO. 4:23-CV-885-SDJ
v. §   **SEALED**
§
GOPALA KRISHNAN, ET AL. §

**TEMPORARY RESTRAINING ORDER AND ORDERS: (1) FREEZING
ASSETS; (2) PROHIBITING THE DESTRUCTION OF DOCUMENTS; (3)
GRANTING EXPEDITED DISCOVERY; (4) REQUIRING SWORN
ACCOUNTINGS; (5) PERMITTING ALTERNATIVE MEANS OF SERVICE,
AND (6) SETTING HEARING DATE ON PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION**

Before the Court is the SEC's Emergency *Ex Parte* Motion for a Temporary
Restraining Order, Preliminary Injunction, Asset Freeze and Other Ancillary
Emergency Relief. (TRO Application).

The motion and the various forms of relief requested concern an enforcement
action brought by the SEC against Gopala Krishnan (Krishnan), Manivannan
Shanmugam (Shanmugam), Sakthivel Palani Gounder (Gounder), Nanban Ventures
LLC (Nanban Ventures), GSM Eternal LLC, a/k/a NorthStars FinTech (GSM),
Himalayan FinTech LLC (Himalayan), and Centum FinTech LLC, a/k/a Sunshines
FinTech (Centum) (collectively, Defendants). (Dkt. #1).

The SEC alleges five causes of action under the federal securities laws. (Dkt.
#1). First, the SEC alleges two causes of action against all Defendants: (1) violations
of Section 10(b) of the Securities Exchange Act of 1934 (Exchange Act), 15 U.S.C. §
78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, and (2) violations of Section
17(a) of the Securities Act of 1933 (Securities Act), 15 U.S.C. § 77q. (Dkt. #1 at 30–

1

32). Second, the SEC alleges three causes of action against Defendants Krishnan, Shanmugam, Gounder, and Nanban Ventures: (1) violations of Sections 206(1) and (2) of the Investment Advisers Act of 1940 (Advisers Act), 15 U.S.C. §§ 80b-6(1), (2), (2) violations of Section 206(3) of the Advisers Act, 15 U.S.C. § 80b-6(3), and (3) violations of Section 206(4) of the Advisers Act, 15 U.S.C. § 80b-6(4), and Rule 206(4)-8 thereunder, 17 C.F.R. § 275.206(4)-8. (Dkt. #1 at 32–34).

In its TRO Application, the SEC seeks the following: (1) a temporary restraining order, and thereafter a preliminary injunction, to restrain and enjoin Defendants from violating the antifraud provisions of the federal securities laws; (2) a conduct-based injunction enjoining Defendants from participating in the issuance, purchase, offer, or sale of any security, whether directly or indirectly, including, but not limited to, through any entity owned or controlled by them, provided, however, that such injunctions shall not prevent each of Krishnan, Shanmugam, and Gounder from purchasing or selling securities for his own personal accounts, and orders: (3) freezing Defendants' assets; (4) requiring Defendants to provide an expedited accounting; (5) preventing the destruction of documents; (6) authorizing expedited discovery for the purpose of evidence gathering in advance of any preliminary-injunction hearing; and (7) authorizing service by alternative means. (Dkt. #4 at 13–14).

The Court held an ex parte hearing on the motion on October 10, 2023, at 10:00am. (Dkt. #14). For the following reasons, the TRO Application is **GRANTED in part**.

# I.

The Court notes that at this early stage of the proceedings, and in considering the SEC's *ex parte* motion, the analysis of the motion necessarily turns on the allegations and supporting evidence presented by the SEC. The SEC's evidence supports its contention that emergency relief is needed to halt an ongoing securities perpetrated by Defendants. Specifically, it appears that since at least April 16, 2021 and continuing to the present, the individual Defendants Krishnan, Shanmugam, and Gounder (collectively, Founders), acting through their controlled "Nanban" companies, have raised at least approximately $129.7 million from over 360 investors in fraudulent securities offerings targeting primarily members of the Indian community, including approximately $89.8 million for five Nanban branded private investment funds that Nanban Ventures offered to retail investors, and $39.9 million from selling high-yield promissory notes to so-called "friends and family" investors through GSM, Himalayan, and Centum (Founder Companies). (Dkt. #14 at 1).

The SEC alleges and has provided proof that Defendants made multiple misrepresentations and omissions to investors and engaged in deceptive conduct in perpetuating the fraud. Defendants have also overstated the profitability of the investments and paid investors (and themselves) millions of dollars in fake profits using, in substantial part, other investor funds (Ponzi payments).

Defendants told investors in the private funds and in the promissory notes that they would invest their money using "GK Strategies," which Krishnan falsely claimed is a "proprietary" trading method that never loses money and outperforms the stock market. *See, e.g.*, Ex. 8 at Ex. 11 at 19 (App. 00224) and at Ex. 44 at 197:15-198:7

(App. 00554). However, the SEC maintains that GK Strategies is, in fact, a widely known and publicly available options-trading technique known as a covered call option investment strategy with put protection. Ex. 2 at ¶¶ 9, 23-24 (App. 00031, 38-39). Additionally, Defendants appear to have misrepresented the funds' investments and concealed conflicts of interest. After telling investors that the funds would trade using GK Strategies and invest in start-up technology companies and real estate, *See, e.g.*, Ex. 8 at Ex. 25 at 11:8-20 (App. 00414) and at Ex. 33 (App. 00464), Defendants invested the funds in Founder Companies, which are other "Nanban" companies that the Founders control disguised to appear as third-party "fintech" companies. *See* Ex. 4 at Ex. C (App. 00135-36); Ex. 8 at Ex. 44 at 151:5-153:17 (App. 00545).[1] Further, Defendants invested most of the assets in unsecured promissory notes issued by the related-party Founder Companies—companies that engaged in no fintech business and have little or no assets other than investor funds or assets purchased with investor funds. Ex. 1 at ¶ 36 (App. 00011); Ex. 6 at Ex. A (App. 00150-54); Ex. 8 at Ex. 44 at 129:5-8 (App. 00540).

The SEC now seeks emergency relief, without notice to Defendants. The SEC requests a temporary restraining order and an order broadly freezing Defendants' assets, permitting expedited discovery, and compelling Defendants to prepare an accounting, among other forms of relief. (Dkt. #4). The SEC alleges that the fraudulent conduct at issue is ongoing, and therefore investors' funds remain at risk of being misappropriated. (Dkt. #4). There is also a risk, identified and described in

---

[1] "Fintech" refers to companies that use technology to improve financial services.

the SEC's motion, that in the near-term investor assets may also be dissipated, wasted or concealed if they receive notice before an order issues. (Dkt. #4).

## II.

Federal Rule of Civil Procedure 65 sets out the requirements for issuing a TRO. For an *ex parte* TRO, like the one requested by the SEC, the movant must offer:

(A) specific facts that clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B) an explanation of why notice should not be required before issuing a TRO, and any efforts made to give notice.

FED. R. CIV. P. 65(b)(1). Second, the court's order must "describe the injury and states why it is irreparable" as well as "why the order was issued without notice." FED. R. CIV. P. 65(b)(2).

A TRO has been aptly described as "simply a highly accelerated and temporary form of preliminary injunctive relief," which requires the party seeking such relief to establish the same four elements for obtaining a preliminary injunction. *Hassani v. Napolitano*, No. 3:09-cv-1201-D, 2009 WL 2044596, at *1 (N.D. Tex. 2009). The application of this standard becomes tricky in the context of cases, like this one, involving an SEC enforcement action alleging securities fraud. That's because the availability of a preliminary injunction in SEC civil enforcement actions is derived from explicit statutory authorization. Under § 20(b) of the Securities Act, 15 U.S.C. § 77t(b), and § 21(d) of the Exchange Act, 15 U.S.C. § 77u(d), the SEC may obtain injunctive relief upon "a proper showing" that there is a "reasonable likelihood that

5

the defendant[s][are] engaged or about to engage in practices that violate the federal securities laws." *SEC v. First Fin. Group of Tex.*, 645 F.2d 429, 434 (5th Cir. Unit A May 1981) (citations omitted).[2]

Some courts have held that this statutory pedigree and associated standard of proof "frees the SEC" of the responsibility usually imposed on those seeking a preliminary injunction, and by extension a TRO, of showing risk of irreparable injury. *See SEC v. Prater*, 289 F.Supp.2d 39, 49 (D. Conn. 2003) (citing *SEC v. Unifund SAL*, 910 F.2d 1028, 1036 (2d Cir. 1990)). Other courts have disagreed and held that, at least at the TRO stage, the SEC, like other litigants, must meet the requirements of Rule 65(b)(1), including a clear showing of irreparable injury, to obtain a TRO. *See SEC v. Reliable One Resources, Inc.*, 2023 WL 177687, at *2–3 (E.D. Tex. Jan. 9, 2023).

Whether Rule 65(b)(1)'s requirement of irreparable harm is imposed in this context or not, the underlying showing of securities violations required of the SEC "is usually made with proof of past substantive violations that indicate a reasonable likelihood of future substantive violations." *First Fin. Group of Tex.*, 645 F.2d at 434 (citations omitted). Additionally, "[w]hen scienter is an element of the substantive

---

[2] *See also  SEC v. Zale Corp.*, 650 F.2d 718, 720 (5th Cir. Unit A July 1981) ("[T]he Commission is entitled to prevail [on its permanent injunction application] when the inferences flowing from the defendant's prior illegal conduct, viewed in light of present circumstances, betoken a 'reasonable likelihood' of future transgressions."); *SEC v. Blatt*, 583 F.2d 1325, 1334 (5th Cir.1978) ("The critical question in issuing the injunction and also the ultimate test on review is whether defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future.").

violation sought to be enjoined, it must be proven before an injunction may issue." *SEC v. Tyler*, 2002 WL 32538418, at *2 (N.D. Tex. Feb.21, 2002) (citing *Aaron v. SEC*, 446 U.S. 680, 699-700, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980)). "[I]n SEC civil enforcement actions for preliminary injunctive relief under the antifraud provisions of the federal securities laws . . . the proper standard of proof is the preponderance of the evidence." *First Fin. Group of Tex.*, 645 F.2d at 434.

The Court finds that the SEC has met all of the requirements for a TRO, including Rule 65(b)(1)'s "irreparable injury" requirement. Specifically, the SEC has clearly demonstrated both a reasonable likelihood that the Defendants are engaged or about to engage in practices that violate the federal securities laws and that an irreparable injury is imminent.

### III.

The SEC has shown by a preponderance of the evidence that Defendants have made numerous misrepresentations to investors and potential investors, such as by falsely claiming that GK Strategies is a "proprietary" trading method that never loses money. The SEC has also shown that Defendants acted deceptively by commingling and misappropriating funds, such as by making Ponzi payments to both investors and Founders. In addition, the SEC established that Defendants used Ponzi payments because there were insufficient legitimate funds to support the distributions. The SEC provides seven declarations and numerous transcripts and depositions, which, taken together, sufficiently support these allegations. *See, e.g.,* Ex. 1 ¶¶ 52–65 (App. 00017–23); Ex. 2 ¶¶ 35–37 (App. 00043–44); Ex. 3 ¶¶ 20 (App.

00072); Ex. 4. at Ex. C (App. 00135–36); Ex. 5 ¶¶ 8–11 (App. 00145–46); Ex. 6 ¶ 9 (App. 00148); Ex. 7 ¶¶ 8–16 (App. 00158–59); Ex. 8 at Ex. 25 at 11:21–24 (App. 00414).

The SEC has further demonstrated that there is a risk that Defendants will continue to misappropriate and mismanage investors' funds, and that Defendants may conceal or dissipate funds or destroy evidence in the absence of a TRO. This is evidenced by Defendants' past misuse of assets, such as their commingling and misappropriation of funds, as well as Defendants' recent international expansion efforts. Ex. 8 at Ex. 38 (App. 00498); Ex. 8 at Ex. 39 (App. 501). These facts also establish that there is a need for an accounting of assets to assess the disposition of investor funds and to determine the total assets that should be frozen.

Having considered the SEC's Complaint, motion, supporting memorandum, declarations, and exhibits thereto, and the argument of counsel, the Court finds:

1.    This Court has jurisdiction over the parties to, and the subject matter of, this action, and the SEC is a proper party to bring this action seeking the relief sought in its Complaint, and its motion.

2.    The SEC has made a sufficient and proper showing in support of the relief granted herein, as required by Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d), and Section 209(d) of Advisers Act, 15 U.S.C. §§ 80b-9(d), by evidence establishing a *prima facie* case and reasonable likelihood that Defendants have engaged in, are engaging in, are about to engage in, and unless restrained and enjoined will continue to engage in

transactions, acts, practices, and courses of business that constitute violations of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5; and Sections 206(1), (2), (3), and (4) of the Advisers Act, 15 U.S.C. §§ 80b-6(1), (2), (3), (4), and Rule 206(4)-8 thereunder, 17 C.F.R. § 275.206(4)-8.

3.      There is good cause to believe that Defendants used improper and unlawful means to obtain investor funds and assets and that investor funds have been misappropriated and misapplied, as described in the SEC's Complaint and in the TRO Application. Good cause exists to believe that, unless restrained and enjoined by order of this Court, Defendants will dissipate, conceal, or transfer assets that could be the subject to an order directing disgorgement or the payment of civil money penalties in this action.

4.      There is good cause to believe that Defendants do not have sufficient funds or assets to satisfy the relief that might be ordered in this action.

5.      There is good cause to believe that the assets, in whatever form they exist, that are owned, controlled, or possessed by Defendants should be frozen to preserve the status quo and to prevent any misappropriation, misapplication, dissipation, or other action taken to the detriment of investors.

6.      There is good cause to believe that requiring notice to the Defendants of the SEC's motion for this order would result in immediate and irreparable injury, loss, or damage to the SEC and to investors. It is appropriate for the Court to issue,

ex parte, a Temporary Restraining Order, an Asset Freeze, and the other orders herein, so that prompt service on appropriate financial institutions can be made, thus preventing the dissipation of assets.

7.     There is good cause to believe that an accounting of assets is necessary to determine the disposition of investor funds and to ascertain the total assets that should continue to be frozen.

8.     There is good cause to believe that, unless restrained and enjoined by order of this Court, Defendants may alter or destroy documents relevant to this action, and it is necessary to preserve and maintain the business records of the Defendants from destruction.

9.     The timing restrictions of FED. R. CIV. P. 26(d), 26(f), 30, and 34 should not apply to this proceeding in light of the SEC's requested relief and its demonstration of good cause, and that expedited discovery is appropriate to permit a prompt and fair hearing on the SEC's motion for preliminary injunction.

It is therefore **ORDERED**:

### A. TEMPORARY RESTRAINING ORDER

10.     Defendants are temporarily restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

(a)     to employ any device, scheme, or artifice to defraud;

10

(b)     to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c)     to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

11.     Defendants are further temporarily restrained and enjoined from violating Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

(a)     to employ any device, scheme, or artifice to defraud;

(b)     to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

12.     Defendants Gopala Krishnan, Manivannan Shanmugam, Sakthivel Palani Gounder, and Nanban Ventures LLC are further temporarily restrained and enjoined from violating Sections 206(1) and (2) of the Advisers Act, 15 U.S.C.

§§ 80b-6(1) and (2), by using the mails or any means or instrumentality of interstate commerce, while acting as investment advisers within the meaning of Section 202(a)(11) of the Advisers Act, 15 U.S.C. § 80b-2(a)(11), directly or indirectly:

    (a)    to employ a device, scheme, or artifice to defraud a client or prospective client; or

    (b)    to engage in a transaction, practice, or course of business which operates as a fraud or deceit upon a client or prospective client.

13.    Defendants Gopala Krishnan, Manivannan Shanmugam, Sakthivel Palani Gounder, and Nanban Ventures LLC are further temporarily restrained and enjoined from violating Section 206(4) of the Advisers Act, 15 U.S.C. §§ 80b-6(4), and Rule 206(4)-8 thereunder, 17 C.F.R. § 275.206(4)-8, by using the mails or any means or instrumentality of interstate commerce, while acting as investment advisers within the meaning of Section 202(a)(11) of the Advisers Act, 15 U.S.C. § 80b-2(a)(11), directly or indirectly, to engage in an act, practice, or course of business that is fraudulent, deceptive, or manipulative.

14.    Defendants Gopala Krishnan, Manivannan Shanmugam, Sakthivel Palani Gounder, and Nanban Ventures LLC are further temporarily restrained and enjoined from violating Section 206(3) of the Advisers Act (15 U.S.C. §§ 80b-6(3)), by using the mails or any means or instrumentality of interstate commerce, while acting as investment advisers within the meaning of Section 202(a)(11) of the Advisers Act (15 U.S.C. § 80b-2(a)(11)), directly or indirectly, to act as

12

principal for its/his own account, knowingly to sell securities to or purchase securities from clients—or knowingly to effect sales or purchases of securities for the account(s) of such client, without disclosing to such clients in writing before the completion of such transactions the capacities in which they are acting and obtaining the consent of the clients to such transactions.

15. Defendants are further temporarily restrained and enjoined from participating in the issuance, purchase, offer, or sale of any security, whether directly or indirectly, including, but not limited to, through any entity owned or controlled by them, provided, however, that such injunctions shall not prevent each of Defendants Gopala Krishnan, Manivannan Shanmugam, and Sakthivel Palani Gounder, from purchasing or selling securities for his own personal accounts.

16. As provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraphs of this Section I also bind the following who receive actual notice of this order by personal service or otherwise: (a) Defendants' officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with any Defendants or with anyone described in (a).

## B. ASSET FREEZE ORDER

17. Defendants and their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise are restrained and enjoined from, directly or indirectly, making any payment or expenditure of funds, incurring any additional liability (including, specifically, by advances on any line

of credit and any charges on any credit card), or effecting any sale, gift, hypothecation or other disposition of any assets, securities, investments, real property, digital assets, digital currencies, cryptocurrencies, or any other tangible or intangible assets pending provision of sufficient proof to the Court of sufficient funds or assets to satisfy all claims alleged in the SEC's Complaint, or the posting of a bond or surety sufficient to assure payment of any such claim.

18.     Any bank, trust company, broker-dealer, depository institution, third-party payment processor, title company, coin exchange, or any other holder or custodian of any digital assets, digital currencies, cryptocurrencies, or other depository institution holding accounts for or on behalf of any of the Defendants shall make no transactions in funds, assets, securities, investments, real property, digital assets, digital currencies, cryptocurrencies, or any other tangible or intangible assets (except liquidating transactions necessary to comply with a court order or to avoid wasting assets) and shall make no disbursements of funds, assets, securities, investments, real property, digital currencies, cryptocurrencies, or any other tangible or intangible assets (including extensions of credit or advances on existing lines of credit), including the honor of any negotiable instrument (including specifically, any check, draft, or cashier's check) purchased by or for Defendants pending further order of this Court.

19.     The SEC may cause a copy of this order to be served on any bank, trust company, broker-dealer, depository institution, third-party payment processor, title company, coin exchange, or any other holder or custodian of any

digital assets, digital currencies, cryptocurrencies, or on any entity or individual either by United States mail, email, or facsimile as if such service were personal service, to restrain and enjoin any such institution, entity, or individual from disbursing assets, directly or indirectly, to or on behalf of Defendants or any companies or persons or entities under their control.

20.    All other individuals, corporations, partnerships, limited liability companies and other entities are hereby restrained and enjoined from disbursing any funds, securities, or other assets or property obtained from Defendants without adequate consideration.

21.    All banks, savings and loan associations, savings banks, trust companies, broker dealers, commodities dealers, investment companies, other financial or depository institutions and investment companies, third-party payment processors, title companies, coin exchanges, any other holder or custodian of any digital assets, digital currencies, cryptocurrencies, individuals, corporations, partnerships, limited liability companies, or other artificial entities that holds or has held, controls or has controlled, or maintains or has maintained custody of any of Defendants' funds, securities, or other property at any time since December 31, 2020 shall:

A.    Prohibit Defendants and all other persons from withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting, selling, or otherwise disposing of Defendants' assets, except as directed by further order of the Court;

B.     Deny Defendants and all other persons access to any safe deposit box that is: (i) owned, controlled, managed, or held by, on behalf of, or for the benefit of Defendants, either individually or jointly; or (ii) otherwise subject to access by Defendants;

C.     Provide counsel for the SEC within five (5) business days of receiving a copy of this order, a statement setting forth: (i) the identification number of each and every account or other asset owned, controlled, managed, or held by, on behalf of, or for the benefit of Defendants, either individually or jointly; (ii) the balance of each such account, or a description of the nature and value of such asset as of the close of business on the day on which this order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other asset was remitted; and (iii) the identification of any safe deposit box that is owned controlled, managed, or held by, on behalf of, or for the benefit of Defendants, either individually or jointly, or is otherwise subject to access by Defendants; and

D.     Upon request by the SEC, promptly provide the SEC with copies of all records or other documentation pertaining to such account or asset, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts,

16

deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, Internal Revenue Service Form 1099s, and safe deposit box logs.

## C. DOCUMENT PRESERVATION ORDER

22.    Except as otherwise ordered by this Court, each of the Defendants be and hereby are temporarily restrained and enjoined from, directly or indirectly: destroying, mutilating, concealing, transferring, altering, or otherwise disposing of, in any manner, any documents, which includes all books, records, computer programs, computer files, computer printouts, contracts, emails, correspondence, memoranda, brochures, or any other documents of any kind in their possession, custody or control, however created, produced, or stored (manually, mechanically, electronically, or otherwise), and any accounts, account passwords, computer passwords, device PINs and passwords, cryptographic keys, or digital wallets, pertaining in any manner to Defendants.

23.    As provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this order by personal service or otherwise: (a) Defendants' officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with any of the Defendants or with anyone described in (a).

## D. SWORN ACCOUNTING

24.    Defendants shall provide a sworn accounting, under oath, within ten (10) days of the issuance of this order or three (3) days prior to any hearing on the SEC's Motion for Preliminary Injunction and other relief, whichever is sooner.

The accounting shall detail by amount, date, method and location of transfer, payee and payor, purpose of payment or transfer:  (a) all investor monies and other benefits received, directly and indirectly, from or as a result of the activities alleged in the Complaint or thereafter transferred; (b) all monies and other assets received, directly or indirectly, from investors; (c) all of their current assets wherever they may be located and by whomever they are being held, and their current liabilities; and (d) all accounts with any bank, credit union, trust company, financial or brokerage institution maintained for the Defendants at any point during the period from December 31, 2020 to the present. The accounting shall be sufficient to permit a full understanding of the flow of investor funds from the investor to its present location to the extent known by the Defendants or within their power to learn. The accounting and all documents reviewed in the course of the preparation thereof or otherwise pertaining thereto shall be filed with the Court and delivered by email or overnight courier to:

> Keefe Bernstein
> Jason Reinsch
> Securities and Exchange Commission
> Burnett Plaza, Suite 1900
> 801 Cherry Street, Unit 18
> Fort Worth, Texas 76102
> Email: Bernsteink@sec.gov; reinschj@sec.gov

by the deadline set forth above. After completion of the accounting, each of the Defendants shall produce to the SEC at a time agreeable to the SEC, all books, records, and other documents supporting or underlying their accounting.

## E. EXPEDITED DISCOVERY

25.    Commencing with the time and date of this order, in lieu of the time

periods, notice provisions, and other requirements of Rules 26, 30, 33, 34, 36, and 45 of the Federal Rules of Civil Procedure and the corresponding Local Rules of this Court, discovery shall proceed as follows:

      A.      All parties shall comply with the provisions of Rule 45 of the Federal Rules of Civil Procedure regarding issuance and service of subpoenas unless the person designated to provide testimony or to produce documents or things agrees to provide the testimony or to produce the documents or things without the issuance of a subpoena and/or to do so at a place other than one at which testimony or production can be compelled.

      B.      Any party may notice and conduct depositions upon oral examination subject to minimum notice of 72 hours.

      C.      All parties shall produce for inspection and copying all documents and things that are requested within 72 hours of service of a written request for those documents and things.

      D.      All parties shall serve written responses to any other party's request for discovery within 72 hours. The documents, responses, and other things being produced in response to requests described above shall be sent to the SEC addressed as follows:

Securities and Exchange Commission
Fort Worth Regional Office
Attention: Keefe Bernstein and Jason Reinsch
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX 76102-6882
Email:  bernstienk@sec.gov; reinschj@sec.gov

The SEC's responses shall be sent to the other parties at such address(es) as may be designated by them in writing.

E.    All discovery requests and responses may be served by the most expeditious means available, including by email and facsimile.

F.    Written discovery propounded and depositions taken pursuant to this section of this order shall not count against the limitations on the number or duration of written discovery and depositions set forth in the Federal Rules of Civil Procedure.

## F.    ALTERNATIVE MEANS OF SERVICE

26.    The United States Marshal in any District in which the Defendants reside, transact business, or may be found, is hereby authorized and directed to make service of process at the request of the SEC or any duly-appointed agent of the Court in this case. Alternatively, if the U.S. Marshal is unavailable, any federal, state, county, or city law enforcement officer(s) is hereby authorized and directed to make service of process at the request of the SEC or any duly-appointed agent of the Court in this case. Furthermore, the SEC is permitted to effect service upon the Defendants, their agents, or their attorneys of all pleadings and other papers, including the Summons, the Complaint, the emergency motion, supporting brief and appendix, and Court orders, personally, by facsimile, by electronic mail, by overnight courier, by mail, or by any other alternative provision for service permitted by Rule 4 of the Federal Rules of Civil Procedure, or as this Court may direct by further order.

### G. Expiration of Temporary Restraining Order Only

27.     The portion of this order that constitutes a TRO is entered at **6:45 p.m. on Wednesday, October 11, 2023**. This TRO shall expire at **6:45 p.m. on Wednesday, October 25, 2023**, unless for good cause shown it is extended or the parties against whom it is directed consent that it may be extended for a longer period. *See* Fed. R. Civ. P. 65(b)(2). All other provisions of this order, including the asset freeze, shall remain in full force and effect until specifically modified by further order of this Court.

### H. Preliminary Injunction Hearing

28.     The SEC's motion for a preliminary injunction is set for a hearing at **10:00 a.m. on Monday, October 23, 2023**. Defendants are allowed until **6:00 p.m. on Wednesday, October 18, 2023**, to respond to the motion for a preliminary injunction. The SEC is allowed until **6:00 p.m. on Friday, October 20, 2023**, to file any reply. As always, the parties may move to modify this schedule for good cause.

29.     Any declarations, affidavits, points and authorities, or other submissions in support of, or in opposition to, the issuance of such an Order shall be filed with the Court and delivered by hand or overnight delivery to Keefe Bernstein; Securities and Exchange Commission; Burnett Plaza, Suite 1900; 801 Cherry Street, Unit 18; Fort Worth, Texas 76102 and also via email to bernsteink@sec.gov and reinschj@sec.gov, and served via email, or by hand or overnight delivery to the offices of the Defendants or their attorneys no later than four full business days before the hearing. Any reply papers shall be filed with the

Court and served via email to opposing counsel no later than 24 hours before the hearing.

30.    The SEC must serve on Defendants (i) this order, (ii) the SEC's motion for a preliminary injunction and all supporting materials, and (iii) the complaint. The SEC must serve those materials soon as practicable and must email them to defendants' counsel by **5:00 p.m. on Friday, October 13, 2023**. The SEC must file a notice of compliance that all defendants have received a copy of this hearing notice by **5:00 p.m. on Monday, October 16, 2023**. This order binds only those who receive actual notice of it by personal service or otherwise. *See* FED. R. CIV. P. 65(d)(2).

## I.    RETENTION OF JURISDICTION

31.    This Court shall retain jurisdiction over this action for the purpose of implementing and carrying out the terms of all orders and decrees which may be entered herein and to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

IT IS SO ORDERED.

Signed at 6:45 p.m. on this 11th day of October 2023.

**So ORDERED and SIGNED this 11th day of October, 2023.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE