UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE | § | |
| COMMISSION | § | |
| | § | |
| v. | § | CIVIL NO. 4:23-CV-885-SDJ |
| | § | |
| GOPALA KRISHNAN, ET AL. | § | |

**OMNIBUS ORDER ON DEFENDANTS' MOTION TO DISSOLVE OR MODIFY ASSET FREEZE, PLAINTIFF'S MOTION FOR APPOINTMENT OF RECEIVER, AND MOTIONS TO SEAL**

Before the Court are Defendants Gopala Krishnan ("Krishnan"), Manivannan Shanmugam ("Shanmugam"), Sakthivel Palani Gounder ("Gounder"), Nanban Ventures LLC ("Nanban Ventures"), GSM Eternal LLC, a/k/a NorthStars FinTech ("GSM"), Himalayan FinTech LLC ("Himalayan"), and Centum FinTech LLC, a/k/a Sunshines FinTech's ("Centum") (collectively, "Defendants") Emergency Motion to Dissolve or, Alternatively, Modify the Asset Freeze Order, (Dkt. #61), and Plaintiff Securities and Exchange Commission's ("SEC") Motion for Appointment of Receiver and Brief in Support, (Dkt. #77). Having considered the motions, subsequent briefing, and applicable legal authorities, the Court concludes that Defendants' Emergency Motion to Dissolve or, Alternatively, Modify the Asset Freeze Order, (Dkt. #61), should be denied without prejudice and the SEC's Motion for Appointment of Receiver and Brief in Support, (Dkt. #77), should be granted.

1

# I. BACKGROUND

## A. Factual Background

In this securities fraud civil enforcement action, the SEC alleges five causes of action under the federal securities laws. (Dkt. #1). First, the SEC alleges that all Defendants violated: (i) Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5; and (ii) Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q. (Dkt. #1 at 30–32). Second, the SEC alleges three causes of action against Defendants Krishnan, Shanmugam, Gounder, and Nanban Ventures: (i) violations of Sections 206(1) and (2) of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-6(1), (2); (ii) violations of Section 206(3) of the Advisers Act, 15 U.S.C. § 80b-6(3); and (iii) violations of Section 206(4) of the Advisers Act, 15 U.S.C. § 80b-6(4), and Rule 206(4)-8 thereunder, 17 C.F.R. § 275.206(4)-8. (Dkt. #1 at 32–34).

The SEC alleges that since at least April 16, 2021, Defendants Krishnan, Shanmugam, and Gounder, acting through their controlled "Nanban" companies, have raised at least approximately $129.7 million from over 360 investors in fraudulent securities offerings targeting primarily members of the Indian community, including approximately $89.8 million from five Nanban branded private investment funds that Nanban Ventures offered to retail investors, and $39.9 million from selling high-yield promissory notes to so-called "friends and family" investors through GSM, Himalayan, and Centum. (Dkt. #14 at 1). The SEC alleges that

Defendants made multiple misrepresentations and omissions to investors and engaged in deceptive conduct in perpetuating the fraud.

At the root of the alleged fraud are "GK Strategies"—Defendants' self-described "patented" and "proprietary" investment techniques that they claim are guaranteed to make money. To the contrary, the SEC alleges that GK Strategies merely implement widely known and publicly available trading techniques. Defendants also allegedly misrepresented investments and concealed conflicts of interest. Further, Defendants have also allegedly misrepresented and omitted crucial information about GK Strategies' success and paid investors (and themselves) millions of dollars in fake profits using, in substantial part, other investor funds—i.e., Ponzi payments.

Defendants contest these allegations and maintain that they have not violated any securities law.

**B. Procedural Background**

The SEC filed its Complaint under seal, (Dkt. #1), and promptly filed an Emergency *Ex Parte* Motion for Temporary Restraining Order, Preliminary Injunction, Asset Freeze, and Other Ancillary Emergency Relief ("TRO Application"), (Dkt. #4). On October 11, 2023, after conducting an ex parte hearing, the Court granted the SEC's motion in part and issued a Temporary Restraining Order, Asset Freeze Order, Document Preservation Order, and orders mandating a Sworn Accounting and Expedited Discovery ("TRO"). (Dkt. #16).

After granting two continuances at Defendants' request, the Court held a hearing on the SEC's motion for a preliminary injunction on November 30, 2023.

However, instead of presenting argument or evidence, the parties informed the Court that they had reached an agreement regarding entry of an injunction. That same day, the Court entered the parties' Agreed Preliminary Injunction and Order Extending Asset Freeze and Other Ancillary Relief as to Defendants, wherein Defendants agreed to a number of enjoining provisions and an asset freeze, although they specifically did not admit any "allegations made in the SEC's Complaint and TRO Application." (Dkt. #49).

At the hearing, Defendants also indicated that they intended to move for the dissolution or modification of the asset freeze. Nearly two months later, Defendants filed an emergency motion to dissolve or, alternatively, modify the asset freeze, arguing that they have sufficient assets to satisfy the almost $130 million disgorgement the SEC seeks. (Dkt. #61). The SEC responded in opposition, (Dkt. #74), and subsequently moved for the appointment of a receiver to manage and preserve Defendants' assets, (Dkt. #77). The Court now considers both motions in turn.

## II. MODIFICATION OF ASSET FREEZE

"When reviewing a request to modify or terminate [an asset freeze], the Court must consider whether doing so is in the best interests of the defrauded investors." *SEC v. Heartland Grp. Ventures, LLC*, No. 4:21-CV-01310-O, 2022 WL 1527542, at *2 (N.D. Tex. Mar. 18, 2022) (cleaned up), *report and recommendation adopted*, 2022 WL 1523471 (N.D. Tex. May 13, 2022). "The touchstone of the Court's inquiry is 'equity' and a party seeking to unfreeze assets must establish that the funds he seeks to release are untainted and that there are sufficient funds to satisfy any

4

disgorgement remedy that might be ordered in the event a violation is established at trial." *Id.* (citations omitted).

In their Emergency Motion to Dissolve or, Alternatively, Modify the Asset Freeze Order, Defendants present the following three "options" to the Court: (1) dissolve the asset freeze entirely, (2) limit the asset freeze to Defendants' claimed interest in seven properties, or (3) modify the asset freeze to pay business expenses, living expenses, and attorneys' fees from liquid assets. (Dkt. #61). However, Defendants have not shown that any of these three options are in the best interests of defrauded investors, that the assets they are seeking to unfreeze are untainted, or that there will be sufficient funds remaining available to satisfy a disgorgement order. Accordingly, the Court denies this motion without prejudice. And, as detailed below, *see infra* Section III, the Court finds that a receiver will be in the best position to evaluate these options, to obtain independent valuation of assets and properties, and to make necessary payments from among the liquid funds. If payments are required in the interim,[1] Defendants may submit a renewed motion with the proper showings as detailed above.

## III. APPOINTMENT OF RECEIVER

## A. Legal Standard for Appointment of Receiver

A court's equitable power to appoint a receiver in SEC civil enforcement actions is well-established. *SEC v. First Fin. Grp. of Tex.*, 645 F.2d 429, 438 (5th Cir. Unit A

---

[1] The Court notes that Defendants have labeled their motion as an emergency and claim that certain properties are at imminent risk, yet provide no explanation for why they waited two months to file said motion.

May 1981). Indeed, "the appointment of a temporary receiver is often a necessary ancillary form of relief in a SEC civil enforcement action for injunctive relief." *Id*. Particularly, "in instances in which the corporate defendant, through its management, has defrauded members of the investing public," the Fifth Circuit has found the district court's appointment of a temporary receiver to be even more critical. *Id*.

The parties disagree about the applicable standard for appointment of a receiver. The SEC argues that the *First Financial* standard applies. Under that standard, a court may appoint a receiver simply upon a "prima facie showing of fraud and mismanagement." *SEC v. Barton*, 79 F.4th 573, 578 (5th Cir. 2023) (quoting *First Fin.*, 645 F.2d at 438). In contrast, Defendants argue that the more demanding *Netsphere* standard applies. *See Netsphere, Inc. v. Baron*, 703 F.3d 296 (5th Cir. 2012). Under this standard, a court should only appoint a receiver "where there is a clear necessity to protect a party's interest in property, legal and less drastic equitable remedies are inadequate, and the benefits of receivership outweigh the burdens on the affected parties." *Id*. at 305.

The Fifth Circuit recently provided guidance on the applicability of these standards. When "the SEC [has] already obtained injunctive relief," the *First Financial* standard applies, meaning that the SEC must only make a prima facie showing of fraud and mismanagement. *Barton*, 79 F.4th at 578. In this circumstance, the receiver is an "adjunct to" and a "necessary implementation of [the] injunctive

relief." *Id.* (cleaned up). However, when no injunctive relief has been issued, the more onerous *Netsphere* standard applies. *Id.* at 578–79.

The Court agrees with the SEC that the *First Financial* standard applies here. As noted herein, the Court initially entered a TRO in this case, which was premised on the determination that "the SEC has clearly demonstrated both a reasonable likelihood that the Defendants are engaged or about to engage in practices that violate the federal securities laws and that an irreparable injury is imminent." (Dkt. #16 at 7). This Court further explained that:

> The SEC has made a sufficient and proper showing in support of the relief granted herein . . . by evidence establishing a *prima facie* case and reasonable likelihood that Defendants have engaged in, are engaging in, are about to engage in, and unless restrained and enjoined will continue to engage in transactions, acts, practices, and courses of business that constitute violations of [federal securities laws].

(Dkt. #16 at 8–9). The standard for obtaining a temporary restraining order is the same as that for obtaining a preliminary injunction. *See Bowling v. Dahlheimer*, No. 4:18-CV-00610-ALM-CAN, 2018 WL 6582826, at *1 (E.D. Tex. Oct. 3, 2018). Indeed, a TRO has been aptly described as "simply a highly accelerated and temporary form of preliminary injunctive relief." *Lee v. Verizon Commc'ns, Inc.*, No. 3:12–CV–4834–D, 2012 WL 6089041, at *1 n.2 (N.D. Tex. Dec. 7, 2012). Accordingly, at the time of the preliminary injunction hearing, the Court had already concluded that the SEC had presented a prima facie case and that there was a reasonable likelihood that Defendants had violated, and continued to violate, federal securities laws.

Nothing that occurred at the preliminary injunction hearing changed the Court's analysis of the SEC's evidence. To the contrary, rather than contest the SEC's

evidence at the hearing, the Defendants agreed to a preliminary injunction. *See* (Dkt. #49 at 2) ("The Defendants . . . agree to the *preliminary injunctive relief* set forth in this order." (emphasis added)). Nonetheless, Defendants assert that the Agreed Preliminary Injunction does not constitute "injunctive relief" because they agreed to the injunction and did not admit to the SEC's allegations. (Dkt. #86 at 9–10). This puzzling argument fails.

To begin, that Defendants voluntarily agreed to be enjoined does not change the fact that the Court has entered injunctive relief—which has remained effective since it was entered and will remain effective until further order. In this regard, *Barton* does not cabin the application of the *First Financial* standard to instances where the Court has held a contested preliminary injunction hearing. Instead, the court distinguished *Netsphere* from *First Financial* based on the fact that "the SEC already obtained injunctive relief" in *First Financial*, which was not the case in *Netsphere*. *Barton*, 79 F.4th at 578. Here, as in *First Financial*, the SEC has obtained injunctive relief. And a receiver is a "necessary implementation of [that] injunctive relief," whether the injunction was agreed to or not. *Id.* (cleaned up).

Moreover, Defendants ignore that the Agreed Preliminary Injunction entered by the Court was grounded in its preexisting determination that evidence already submitted by the SEC "made a sufficient and proper showing in support of [injunctive relief] . . . by evidence establishing a *prima facie* case" that Defendants have engaged in violations of the antifraud provisions of the federal securities laws. (Dkt. #16 at 8–9). Of course, Defendants had the opportunity to present evidence and argument at

the preliminary injunction hearing challenging the SEC's evidence and the Court's conclusion that such evidence met the prima facie standard. Defendants' failure to do so refutes, rather than supports, Defendants' post hoc position that the SEC lacked evidence establishing a prima facie case.

Since the SEC has obtained injunctive relief, first in the form of a TRO and later in an Agreed Preliminary Injunction, both of which were premised on the same, unchallenged evidence submitted by the SEC, the *First Financial* standard applies. Thus, the SEC is only required to make a prima facie showing of fraud and mismanagement. *See First Fin.*, 645 F.2d at 438.

## B. The Appointment of a Receiver is Warranted.

As explained herein, the Court found that the SEC had made a prima facie showing of fraud and mismanagement when it granted a TRO, and that finding remained in place when the Court entered an Agreed Preliminary Injunction. The Court reaffirms that finding now.

The SEC has presented comprehensive evidence demonstrating that Defendants misrepresented GK Strategies' novelty, misstated and omitted crucial details about their "cash flow" model and its efficacy, misrepresented their "FinTech" companies and failed to disclose that they were wholly owned by Defendants, and made Ponzi Payments. Meanwhile, Defendants have failed to overcome this evidence. Taking into consideration the exhibits and affidavits attached in support of Defendants' opposition to injunctive relief and their motion to dissolve or modify the asset freeze, the Court still finds that Defendants have failed to rebut the SEC's

evidence.[2]

Whether the SEC will ultimately prove that Defendants violated the securities laws for which it sued is not the question before the Court at this stage. Instead, the Court is merely tasked with assessing whether the SEC has provided evidence establishing a prima facie case of fraud and mismanagement. And the Court finds that it has. Further, the Court finds that, based on the record in these proceedings, the appointment of a receiver in this action is necessary and appropriate for the purposes of marshaling and preserving all assets of Defendants Nanban Ventures, GSM, Himalayan, and Centum ("Receivership Assets"). Therefore, the Court will appoint a receiver.

It is therefore **ORDERED, ADJUDGED,** and **DECREED** that:

1.      This Court hereby takes exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated, of the following Defendants:

- Nanban Ventures LLC;

- GSM Eternal LLC a/k/a NorthStars FinTech;

- Himalayan FinTech LLC; and

- Centum FinTech LLC a/k/a Sunshines FinTech

---

[2] Defendants continue to focus on the quantity of documents that they have produced, rather than the substance of those documents. While Defendants have attached over one hundred documents to their motion, (Dkt. #61), they have still failed to establish that they have sufficient assets to satisfy a potential disgorgement award. As the SEC has highlighted, questions remain as to the quantity, value, and disposition of Defendants' assets. To use Defendants' own words, they have provided "too little, too late." (Dkt. #86 at 5). Accordingly, the Court finds that a receiver would be in the best position to identify and determine the value of those assets, and secure, preserve, and potentially monetize that value for the benefit of investors.

(collectively, "Receivership Defendants").

2.      Until further Order of this Court, Anthony Box of the law firm Gray
Reed & McGraw LLP is hereby appointed to serve without bond as receiver (the
"Receiver") for the estates of the Receivership Defendants.

### i.      Asset Freeze

3.      Except as otherwise specified herein, all Receivership Assets remain
frozen in accordance with the Agreed Preliminary Injunction and Order Extending
Asset Freeze and Other Ancillary Relief as to Defendants, (Dkt. #49), until further
order of this Court. Accordingly, all persons and entities with direct or indirect control
over any Receivership Assets, other than the Receiver, are hereby restrained and
enjoined from directly or indirectly transferring, setting off, receiving, changing,
selling, pledging, assigning, liquidating, or otherwise disposing of or withdrawing
such assets. This freeze shall include, but not be limited to, Receivership Assets that
are on deposit with financial institutions such as banks, brokerage firms, and mutual
funds.

### ii.      General Powers and Duties of Receiver

4.      The Receiver shall have all powers, authorities, rights, and privileges
heretofore possessed by the officers, directors, managers, and general and limited
partners of the Receivership Defendants under applicable state and federal law, by
the governing charters, by-laws, articles, and/or agreements, in addition to all powers
and authority of a receiver at equity, and all powers conferred upon a receiver by the
provisions of 28 U.S.C. §§ 754, 959, and 1692, and Federal Rule of Civil Procedure 66.

5.      The trustees, directors, officers, managers, employees, investment

advisors, accountants, attorneys, and other agents of the Receivership Defendants (except for the counsel of record in the above captioned case) are hereby dismissed and the powers of any general partners, directors, and/or managers are hereby suspended. Such persons and entities shall have no authority with respect to the Receivership Defendants' operations or assets, except to the extent as may hereafter be expressly granted by the Receiver. The Receiver shall assume and control the operation of the Receivership Defendants and shall pursue and preserve all of their claims.

6.      No person holding or claiming any position of any sort with any of the Receivership Defendants shall possess any authority to act by or on behalf of any of the Receivership Defendants.

7.      Subject to the specific provisions in Sections iii through xiv below, the Receiver shall have the following general powers and duties:

A.      To use reasonable efforts to determine the nature, location, and value of all property interests of the Receivership Defendants, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights, and other assets, together with all rents, profits, dividends, interest, or other income attributable thereto, of whatever kind, which the Receivership Defendants own, possess, have a beneficial interest in, or control directly or indirectly ("Receivership Property" or, collectively, the "Receivership Estates");

B.      To take custody, control, and possession of all Receivership Property and records relevant thereto from the Receivership Defendants; to sue for and collect, recover, receive, and take into possession from third parties all Receivership Property and records relevant thereto;

C.      To manage, control, operate, and maintain the Receivership Estates and hold in his possession, custody, and control all

Receivership Property, pending further Order of this Court;

D.  To use Receivership Property for the benefit of the Receivership Estates, making payments and disbursements, and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging his duties as Receiver;

E.  To take any action which, prior to the entry of this Order, could have been taken by the officers, directors, partners, managers, trustees, and agents of the Receivership Defendants;

F.  To engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders, or auctioneers;

G.  To take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation or concealment of Receivership Property;

H.  To issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure;

I.  To bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver;

J.  To pursue, resist, and defend all suits, actions, claims, and demands which may now be pending or which may be brought by or asserted against the Receivership Estates; and

K.  To take such other action as may be approved by this Court.

### iii.   <u>Access to Information</u>

8.      Krishnan, Shanmugam, and Gounder (collectively, the "Founders") and the past and/or present officers, directors, agents, managers, general and limited partners, trustees, attorneys, accountants, and employees of the Receivership Defendants, as well as those acting in their place, are hereby ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic information

13

of, and/or relating to, the Receivership Defendants and/or all Receivership Property; such information shall include but not be limited to books, records, documents, accounts, and all other instruments and papers.

9.      Within thirty (30) days of the entry of this Order, the Receivership Defendants shall file with the Court and serve upon the Receiver and the SEC a sworn statement, listing: (a) the identity, location, and estimated value of all Receivership Property; (b) all employees (and job titles thereof), other personnel, attorneys, accountants, and any other agents or contractors of the Receivership Defendants; and (c) the names, addresses, and amounts of claims of all known creditors of the Receivership Defendants.

10.     Within twenty (20) days of the entry of this Order, the Receivership Defendants shall file with the Court and serve upon the Receiver and the SEC a sworn statement and accounting, with complete documentation, covering the period from December 31, 2020, to the present:

       A.    Of all Receivership Property, wherever located, held by or in the name of the Receivership Defendants, or in which any of them, directly or indirectly, has or had any beneficial interest, or over which any of them maintained or maintains and/or exercised or exercises control, including, but not limited to: (a) all securities, investments, funds, real estate, automobiles, jewelry, and other assets, stating the location of each; and (b) any and all accounts, including all funds held in such accounts, with any bank, brokerage or other financial institution held by, in the name of, or for the benefit of any of them, directly or indirectly, or over which any of them maintained or maintains and/or exercised or exercises any direct or indirect control, or in which any of them had or has a direct or indirect beneficial interest, including the account statements from each bank, brokerage or other financial institution;

       B.    Identifying every account at every bank, brokerage, or other

14

financial institution: (a) over which Receivership Defendants have signatory authority; and (b) opened by, in the name of, or for the benefit of, or used by, the Receivership Defendants;

C.    Identifying all credit, bank, charge, debit, or other deferred payment card issued to or used by each Receivership Defendant, including but not limited to the issuing institution, the card or account number(s), all persons or entities to which a card was issued and/or with authority to use a card, the balance of each account and/or card as of the most recent billing statement, and all statements for the last twelve months;

D.    Of all assets received by any of the Receivership Defendants from any person or entity, including the value, location, and disposition of any assets so received;

E.    Of all funds received by the Receivership Defendants, and each of them, in any way related, directly or indirectly, to the conduct alleged in the SEC's Complaint. The submission must clearly identify, among other things, all investors, the securities they purchased, the date and amount of their investments, and the current location of such funds;

F.    Of all expenditures exceeding $1,000 made by any of them, including those made on their behalf by any person or entity; and

G.    Of all transfers of assets made by any of them.

11.    Within thirty (30) days of the entry of this Order, the Receivership Defendants shall provide to the Receiver and the SEC copies of the Receivership Defendants' federal income tax returns for 2020–2023 with all relevant and necessary underlying documentation.

12.    The Founders and the Receivership Defendants' past and/or present officers, directors, agents, attorneys, managers, shareholders, employees, accountants, debtors, creditors, managers, and general and limited partners, and other appropriate persons or entities shall answer under oath to the Receiver all questions which the Receiver may put to them and produce all documents as required

15

by the Receiver regarding the business of the Receivership Defendants, or any other matter relevant to the operation or administration of the receivership or the collection of funds due to the Receivership Defendants. In the event that the Receiver deems it necessary to require the appearance of the aforementioned persons or entities, the Receiver shall make its discovery requests in accordance with the Federal Rules of Civil Procedure.

13.     The Receiver shall have the power to issue subpoenas to compel testimony of persons or production of records, consistent with the Federal Rules of Civil Procedure and applicable Local Rules, except for the provisions of Federal Rule of Civil Procedure 26(d)(1), concerning any subject matter within the powers and duties granted by this Order.

14.     The Receivership Defendants are required to assist the Receiver in fulfilling his duties and obligations. As such, they must respond promptly and truthfully to all requests for information and documents from the Receiver.

### iv.     Access to Books, Records and Accounts

15.     The Receiver is authorized to take immediate possession of all assets, bank accounts or other financial accounts, books, and records and all other documents or instruments relating to the Receivership Defendants. All persons and entities having control, custody, or possession of any Receivership Property are hereby directed to turn such property over to the Receiver.

16.     The Receivership Defendants, as well as their agents, servants, employees, attorneys, any persons acting for or on behalf of the Receivership Defendants, and any persons receiving notice of this Order by personal service,

16

facsimile transmission or otherwise, having possession of the property, business, books, records, accounts, or assets of the Receivership Defendants are hereby directed to deliver the same to the Receiver, his agents, and/or employees.

17.     All banks, brokerage firms, financial institutions, and other persons or entities which have possession, custody or control of any assets or funds held by, in the name of, or for the benefit of, directly or indirectly, and of the Receivership Defendants that receive actual notice of this Order by personal service, facsimile transmission or otherwise shall:

    A.    Not liquidate, transfer, sell, convey, or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of the Receivership Defendants except upon instructions from the Receiver;

    B.    Not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;

    C.    Within five (5) business days of receipt of that notice, file with the Court and serve on the Receiver and counsel for the SEC a certified statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and

    D.    Cooperate expeditiously in providing information and transferring funds, assets, and accounts to the Receiver or at the direction of the Receiver.

### v.   **Access to Real and Personal Property**

18.     The Receiver is authorized to take immediate possession of all personal property of the Receivership Defendants, wherever located, including but not limited to electronically stored information, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage

devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies, and equipment.

19.     The Receiver is authorized to take immediate possession of all real property of the Receivership Defendants, wherever located, including but not limited to all ownership and leasehold interests and fixtures. Upon receiving actual notice of this Order by personal service, facsimile transmission, or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or (c) destroying, concealing, or erasing anything on such premises.

20.     In order to execute the express and implied terms of this Order, the Receiver is authorized to change door locks to the premises described above. The Receiver shall have exclusive control of the keys. The Receivership Defendants, or any other person acting or purporting to act on their behalf, are ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the receivership.

21.     The Receiver is authorized to open all mail directed to or received by or at the offices or post office boxes of the Receivership Defendants, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

### vi.   <u>Notice to Third Parties</u>

22.     The Receiver shall promptly give notice of his appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers, and general and limited partners of the Receivership Defendants, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

23.     All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to any Receivership Defendant shall, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver and its receipt for such payments shall have the same force and effect as if the Receivership Defendant had received such payment.

24.     In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity, or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estates. All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the SEC.

25.     The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations, or activities of any of the Receivership Defendants (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, the Receivership Defendants. The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver

19

concerning the Receiver's Mail. The Receivership Defendants shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver. All personal mail of any Founders, and/or any mail appearing to contain privileged information, and/or any mail not falling within the mandate of the Receiver, shall be released to the named addressee by the Receiver. The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mail box, depository, business or service, or mail courier or delivery service, hired, rented, or used by the Receivership Defendants. The Receivership Defendants shall not open a new mailbox, or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository, or courier service.

26.     Subject to payment for services provided, any entity furnishing water, electric, telephone, sewage, garbage, or trash removal services to the Receivership Defendants shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver.

**vii.   Injunction Against Interference with Receiver**

27.     The Receivership Defendants and all persons receiving notice of this Order by personal service, facsimile, or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

> A.   Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Property; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for

the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Property;

B.   Hinder, obstruct, or otherwise interfere with the Receiver in the performance of his duties; such prohibited actions include but are not limited to, concealing, destroying, or altering records or information;

C.   Dissipate or otherwise diminish the value of any Receivership Property; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning, or in any way conveying any Receivership Property, enforcing judgments, assessments, or claims against any Receivership Property or any Receivership Defendant, attempting to modify, cancel, terminate, call, extinguish, revoke, or accelerate (the due date) of any lease, loan, mortgage, indebtedness, security agreement, or other agreement executed by any Receivership Defendant or which otherwise affects any Receivership Property; or

D.   Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estates.

28.   The Receivership Defendants shall cooperate with and assist the Receiver in the performance of his duties.

29.   The Receiver shall promptly notify the Court and the SEC's counsel of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

### viii.   <u>Stay of Litigation</u>

30.   As set forth in detail below, the following proceedings, excluding the instant proceeding and all police or regulatory actions and actions of the SEC related to the above-captioned enforcement action, are stayed until further Order of this Court:

All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Property, wherever located; (c) any of the Receivership Defendants, including subsidiaries and partnerships; or (d) any of the Receivership Defendants' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

31.    The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

32.    All Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court. Further, as to a cause of action accrued or accruing in favor of one or more of the Receivership Defendants against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

### ix.    <u>Managing Assets</u>

33.    For each of the Receivership Estates, the Receiver shall establish one or more custodial accounts at a federally insured bank to receive and hold all cash equivalent Receivership Property (the "Receivership Funds").

34.    The Receiver's deposit account shall be entitled "Receiver's Account, Estate of Nanban Ventures LLC, GSM Eternal LLC a/k/a NorthStars FinTech,

Himalayan FinTech LLC, and Centum FinTech LLC a/k/a Sunshines FinTech" together with the name of the action.

35.     The Receiver may, without further Order of this Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property.

36.     Subject to Paragraph 38, immediately below, the Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real property in the Receivership Estates, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property.

37.     Upon further Order of this Court, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver will be authorized to sell, and transfer clear title to, all real property in the Receivership Estates.

38.     The Receiver is authorized to take all actions to manage, maintain, and/or wind-down business operations of the Receivership Estates, including making legally required payments to creditors, employees, and agents of the Receivership Estates and communicating with vendors, investors, governmental and regulatory

23

authorities, and others, as appropriate.

39.     The Receiver shall take all necessary steps to enable the Receivership Funds to obtain and maintain the status of a taxable "Settlement Fund," within the meaning of Section 468B of the Internal Revenue Code and of the regulations.

### x.     Investigate and Prosecute Claims

40.     Subject to the requirement in Section vii above that leave of this Court is required to resume or commence certain litigation, the Receiver is authorized, empowered, and directed to investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal, or foreign court or proceeding of any kind as may in his discretion, and in consultation with SEC counsel, be advisable or proper to recover and/or conserve Receivership Property.

41.     Subject to his obligation to expend receivership funds in a reasonable and cost-effective manner, the Receiver is authorized, empowered, and directed to investigate the manner in which the financial and business affairs of the Receivership Defendants were conducted and (after obtaining leave of this Court) to institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estate, as the Receiver deems necessary and appropriate; the Receiver may seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other relief from this Court as may be necessary to enforce this Order. Where appropriate, the Receiver should provide prior notice to Counsel for the SEC before commencing investigations and/or actions.

42.     The Receiver hereby holds, and is therefore empowered to waive, all

privileges, including the attorney-client privilege, held by all Receivership Defendants.

43.     The receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, his Retained Personnel (as that term is defined below), and the Receivership Estate.

### xi.     Bankruptcy Filing

44.     The Receiver may seek authorization of this Court to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for the Receivership Defendants. If a Receivership Defendant is placed in bankruptcy proceedings, the Receiver may become and may be empowered to operate each of the Receivership Estates as a debtor in possession. In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity. Pursuant to Paragraph 4 above, the Receiver is vested with management authority for all Receivership Defendants and may therefore file and manage a Chapter 11 petition. *See In re Bayou Group, LLC*, 564 F.3d 541, 548–49 (2nd Cir. 2009).

45.     The provisions of Section viii above bar any person or entity, other than the Receiver, from placing any of the Receivership Defendants in bankruptcy proceedings.

### xii.     Liability of Receiver

46.     Until further Order of this Court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary obligations in this matter.

47.     The Receiver and his agents, acting within the scope of such agency ("Retained Personnel") are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel, nor shall the Receiver or Retained Personnel be liable to anyone for any actions taken or omitted by them except upon a finding by this Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

48.     This Court shall retain jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions committed in their representative capacities.

49.     In the event the Receiver decides to resign, the Receiver shall first give written notice to the SEC's counsel of record and the Court of its intention, and the resignation shall not be effective until the Court appoints a successor. The Receiver shall then follow such instructions as the Court may provide.

## xiii.     Recommendations and Reports

50.     The Receiver is authorized, empowered, and directed to develop a plan for the fair, reasonable, and efficient recovery and liquidation of all remaining, recovered, and recoverable Receivership Property (the "Liquidation Plan").

51.     Within ninety (90) days of the entry date of this Order, the Receiver shall file the Liquidation Plan in the above-captioned action, with service copies to counsel of record.

52.     Within thirty (30) days after the end of each calendar quarter, the Receiver shall file and serve a full report and accounting of each Receivership Estate (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Property, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estates.

53.     The Quarterly Status Report shall contain the following:

A.     A summary of the operations of the Receiver;

B.     The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

C.     A schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

D.     A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

E.     A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (a) reducing the claims to judgment; and (b) collecting such judgments);

F.     A list of all known creditors with their addresses and the amounts of their claims;

G.     The status of Creditor Claims Proceedings, after such proceedings have been commenced; and

H.     The Receiver's recommendations for a continuation or

27

discontinuation of the receivership and the reasons for the recommendations.

54.     On the request of the SEC, the Receiver shall provide the SEC with any documentation that the SEC deems necessary to meet its reporting requirements, that is mandated by statute or Congress, or that is otherwise necessary to further the SEC's mission.

55.     The Court may refer to the Receiver any matters concerning the Asset Freeze, including any renewed request by Defendants to dissolve or modify the Asset Freeze. Upon the Court's request, the Receiver shall prepare a formal report and issue a formal recommendation ("Report and Recommendation") on the matter for which the Court has made a request. The Receiver shall reduce any formal Report and Recommendation to writing and shall file it electronically on the case docket via Electronic Case Filing. Any party who wishes to file an objection to the Receiver's Report and Recommendation shall do so no later than fourteen (14) days from the filing date of the Receiver's Report and Recommendation. The parties shall not include—and the Court will not consider—any evidence or argument that was not presented to the Receiver.

### xiv.     Fees, Expenses, and Accountings

56.     Subject to Paragraphs 57–63 immediately below, the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership. Further, prior Court approval is not required for payments of applicable federal, state, or local taxes.

57.     Subject to Paragraph 60 below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order. The Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement.

58.     The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver. Such compensation shall require the prior approval of the Court.

59.     Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Estates (the "Quarterly Fee Applications"). At least thirty (30) days prior to filing each Quarterly Fee Application with the Court, the Receiver will serve upon counsel for the SEC a complete copy of the proposed Quarterly Fee Application, together with all exhibits and relevant billing information in a format to be provided by SEC staff.

60.     All Quarterly Fee Applications will be interim and will be subject to cost-benefit and final reviews at the close of the receivership. At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

61.     Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court. The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

62.     Each Quarterly Fee Application shall:

    A.     Comply with the terms of the Billing Instructions agreed to by the Receiver; and

    B.     Contain representations (in addition to the Certification required by the Billing Instructions) that: (a) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and (b) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

63.     At the close of the Receivership, the Receiver shall submit a Final Accounting, in a format to be provided by SEC staff, as well as the Receiver's final application for compensation and expense reimbursement.

## xv.   <u>Access to Confidential Information and Documents</u>

64.     For purposes of the Protective Order, (Dkt. #35), the Receiver and Retained Personnel, as agents of the Court, constitute Court "personnel," (Dkt. #35 ¶ 9(h)), and are entitled to receive and use "Confidential Information" subject to the terms of the Protective Order.

## IV. SEALING MOTIONS

**A. Defendants' Motion to Seal its Appendix in Support of its Motion to Dissolve, or, Alternatively, Modify the Court's Asset Freeze Order. (Dkt. #58).**

Before the Court is Defendants' Motion to Seal its Appendix in Support of its Motion to Dissolve, or, Alternatively, Modify the Court's Asset Freeze Order. (Dkt. #58). Therein, Defendants move to file various exhibits under seal. The Court has reviewed the exhibits that Defendants unambiguously seek to seal, (Dkt. #62, #63), and finds that they contain confidential information such that there is good cause to file them under seal. *See Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 419 (5th Cir. 2021).

Defendants take alternative positions as to whether Exhibits D, E, and F should be filed under seal. *Compare* (Dkt. #58 at 11–12), *with* (Dkt. #58 at 16). To the extent that Defendants request to file these exhibits under seal, the Court denies Defendants' motion without prejudice.[3]

**B. The SEC's Unopposed Motion to Seal Exhibits in Support of its Response to Defendants' Emergency Motion to Dissolve, or, Alternatively, Modify the Court's Asset Freeze Order. (Dkt. #75).**

Before the Court is the SEC's Unopposed Motion to Seal Exhibits in Support of its Response to Defendants' Emergency Motion to Dissolve, or, Alternatively, Modify the Court's Asset Freeze Order. (Dkt. #75). The SEC states that Defendants

---

[3] The Court notes that Exhibits D, E, and F are not currently filed under seal. (Dkt. #61, #43).

have designated the documents in these exhibits as "Confidential Information," and, therefore, they must be filed under seal.

These arguments misunderstand the relationship between documents marked "confidential" within the context of discovery production and documents that are to be filed as part of the judicial record. The Fifth Circuit has made clear that "courts are duty-bound to protect public access to judicial proceedings and records," a duty that is all too "easy to overlook" in the context of stipulated sealings, and that it is inappropriate to "presum[e] that whatever satisfies the lenient protective-order standard will necessarily satisfy the stringent sealing-order standard." *Binh Hoa Le*, 990 F.3d at 417–18. That's because a strict balancing test applies to a sealing request once a document becomes a judicial record. *Id.* at 419. The Court must "undertake a case-by-case, document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure." *Id.* (cleaned up). Courts are instructed to be "ungenerous with their discretion to seal judicial records." *Id.* at 418.

The SEC, therefore, should have provided the Court with information sufficient to undertake this analysis in its request that the exhibits be filed under seal. But it did not. Instead, the SEC merely suggests that the exhibits should be sealed because they have been designated "confidential" by Defendants. Considering the public's right of access to inspect judicial records and the presumption in favor of

disclosure, the Court finds that the SEC has failed to articulate sufficient reasons to support its motions to file under seal.

## V. CONCLUSION

It is therefore **ORDERED** that the SEC's Motion for Appointment of Receiver and Brief in Support, (Dkt. #77), is **GRANTED**. Anthony Box of the law firm Gray Reed & McGraw LLP is hereby **APPOINTED** to serve as receiver for the estates of the Receivership Defendants.

It is further **ORDERED** that Defendants' Emergency Motion to Dissolve or, Alternatively, Modify the Asset Freeze Order, (Dkt. #61), is **DENIED without prejudice.**

It is further **ORDERED** that Defendants' Corrected Motion for Leave to Exceed Page Limits Under Local Rule CV-7(a)(2), (Dkt. #60), is **GRANTED** and Defendants' Emergency Motion to Dissolve or, Alternatively, Modify the Asset Freeze Order, (Dkt. #61), is deemed properly filed.

It is further **ORDERED** that Defendants' Motion for Leave to Exceed Page Limits Under Local Rule CV-7(a)(2), (Dkt. #85), is **GRANTED** and Defendants' Opposition to SEC's Request to Appoint a Receiver, (Dkt. #86), is deemed properly filed.

It is further **ORDERED** that Defendants' Motion to Seal its Appendix in Support of its Motion to Dissolve, or, Alternatively, Modify the Court's Asset Freeze Order, (Dkt. #58), is **GRANTED in part** and **DENIED in part**.

It is further **ORDERED** that all documents and exhibits referenced in Defendants' sealing motion, except for Exhibits D, E, and F, shall remain under seal.

It is further **ORDERED** that the SEC's Unopposed Motion to Seal Exhibits in Support of its Response to Defendants' Emergency Motion to Dissolve, or, Alternatively, Modify the Court's Asset Freeze Order, (Dkt. #75), is **DENIED without prejudice.**

It is further **ORDERED** that the SEC's exhibits, (Dkt. #76), shall remain under seal until **Thursday, March 21, 2024**. In the interim, either party may submit a renewed motion to seal that is consistent with Fifth Circuit precedent as explained in this order.

**So ORDERED and SIGNED this 7th day of March, 2024.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE