UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>GOPALA KRISHNAN, MANIVANNAN SHANMUGAM, SAKTHIVEL PALANI GOUNDER, NANBAN VENTURES LLC, GSM ETERNAL LLC (A/K/A NORTHSTARS FINTECH), HIMALAYAN FINTECH LLC, and CENTUM FINTECH LLC (A/K/A SUNSHINES FINTECH),<br><br>Defendants. | C.A. No.: 4:23-CV-885-SDJ<br><br>Jury Trial Demanded |

**AGREED MOTION TO MODIFY ASSET FREEZE AND RECEIVERSHIP ORDER AND ENTER FINAL JUDGMENTS AGAINST DEFENDANTS**

Plaintiff Securities and Exchange Commission ("SEC" or "Commission"), Defendants Gopala Krishnan ("Krishnan"), Manivannan Shanmugam ("Shanmugam"), and Sakthivel Palani Gounder ("Gounder," and collectively, the "Founders"), Defendant Nanban Ventures LLC ("Nanban Ventures"), and Defendants GSM Eternal LLC (a/k/a Northstars Fintech), Himalayan Fintech LLC, and Centum Fintech LLC (a/k/a Sunshines Fintech) ("Founder Companies," and collectively with Nanban Ventures, the "Receivership Defendants") file this Agreed Motion to Modify Asset Freeze and Receivership Order and Enter Final Judgments Against Defendants. In support thereof, the SEC, the Founders, and Anthony Box, the Court-appointed Receiver ("Receiver") (collectively, the "Parties"), respectfully show as follows:

## I. PROCEDURAL BACKGROUND

1. On October 5, 2023, the SEC filed its Complaint alleging that the Founders and the Receivership Defendants violated the federal securities laws. [Dkt. No. 1]

2. On November 30, 2023, the Court entered an Agreed Preliminary Injunction and Asset Freeze ("Asset Freeze"). [Dkt. No. 49]

3. On March 7, 2024, the Court entered an Omnibus Order that, among other things, appointed the Receiver ("Receivership Order"). [Dkt. No. 91]

4. On June 21, 2024, and October 18, 2024, the Parties held in-person mediation sessions with the Honorable United States Magistrate Judge Aileen Goldman Durrett. As a result of those mediation sessions and follow up negotiations and discussions, the Parties reached a settlement in principle, subject to finalization of the settlement documentation and approval of the Commission.

5. The Parties have now finalized the settlement documentation, which is provided herewith, and the Commission has approved the settlement.

## II. SETTLEMENT TERMS

The Parties have reached a settlement that resolves the SEC's litigation against all Defendants, leaving only the Receiver's collection and distribution efforts for the benefit of investors to be completed before this case can be closed. As discussed below, the settlement is premised and conditioned upon: (a) entry of Final Judgments by consent against each of the Defendants; (b) entry of an Agreed Order Modifying the Asset Freeze and the Receivership Order (the "Agreed Order"); and (c) the Founders' dismissal with prejudice of their pending Fifth Circuit appeal (No. 24-40291).

A. **Founder Defendant Final Judgments**

As part of the settlement, the Founders have executed the consents attached hereto as Exhibits 1-3 and, subject to the entry of the Agreed Order and the proposed final judgments against the Receivership Defendants, consented, without admitting or denying the allegations in the Complaint, to the entry of final judgments against them ("Founder Defendant Final Judgments") in the forms submitted herewith at Exhibits 4-6 that:

1. Permanently enjoin each of them from violations of Section 17(a) of the Securities Act of 1933 ("Securities Act"), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder, and Sections 206(1), (2), (3), and (4) of the Investment Advisers Act of 1940 ("Advisers Act") and Rule 206(4)-8 thereunder;

2. Enjoin Krishnan (for 10 years) and Shanmugam and Gounder (each for 5 years) from participating in the issuance, purchase, offer, or sale of any security, whether directly or indirectly, including, but not limited to, through any entity owned or controlled by them, provided, however, that each such injunction shall not prevent Krishnan, Shanmugam, or Gounder from purchasing or selling securities for each of their own personal accounts;

3. Order a 10-year officer-and-director bar against Krishnan and 5-year officer-and-director bars against Shanmugam and Gounder;[1] and

4. Order the following monetary relief:

---

[1] The Founders have also consented to the entry of Commission orders imposing associational bars in separate public administrative proceedings instituted pursuant to Section 203(f) of the Advisers Act, in which: (a) Krishnan would receive an associational bar with a right to reapply after 10 years, and (b) Shanmugam and Gounder would each receive an associational bar with a right to reapply after 5 years.

|  | Disgorgement | Prejudgment Interest | Civil Penalty | Total |
|---|---|---|---|---|
| Krishnan | $3,658,776.11 | $275,436.22 | $400,000 | $4,334,212.33 |
| Shanmugam | $1,046,807.06 | $78,804.66 | $240,000 | $1,365,611.72 |
| Gounder | $1,046,707.06 | $78,797.12 | $240,000 | $1,365,504.18 |

The SEC believes that these disgorgement figures represent a reasonable approximation of net profits that the Founders received from the alleged conduct, including amounts the Founders received in distributions from the Founder Companies and their shares of purported profit distributions that the Nanban Venture Funds[2] made to general partner entities under the Founders' control.[3] The penalties are authorized pursuant to Section 20(d) of the Securities Act, Section 21(d)(3) of the Exchange Act, and Section 209(e) of the Advisers Act.

B. **Founder Company and Nanban Ventures Final Judgments**

As a further part of the settlement, the Receiver, in his sole capacity as the receiver over the Receivership Defendants, executed the consents attached hereto as Exhibits 7-8, and he and the Founders have, subject to the entry of the Agreed Order and the Founder Company Final Judgments, consented, without admitting or denying the allegations in the Complaint, to the entry of final judgments against the Founder Companies ("Founder Company Final Judgment") and Nanban Ventures ("Nanban Ventures Final Judgment") in the forms submitted herewith at Exhibits 9-10 that:

1. Permanently enjoin the Receivership Defendants from violations of Section 17(a)

---

[2] The "Nanban Venture Funds" are: Nanban Venture Capital Fund I, LP; Nanban Ventures AAA Fund, LP; Nanban Ventures Abundance Fund, LP; Nanban Ventures Ganga Fund, LP; and Nanban Ventures Nile Fund, LP.

[3] The Founders are consenting to the relief set forth in the Founder Defendant Final Judgment but are not agreeing to or taking a position on this sentence regarding what the SEC states these disgorgement figures represent.

of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder;

2. Permanently enjoin the Receivership Defendants from participating in the issuance, purchase, offer, or sale of any security, whether directly or indirectly, including, but not limited to, through any entity owned or controlled by them, provided, however, that such injunctions shall not prevent each of them from selling securities for their own accounts to liquidate their assets; and

3. Order the following monetary relief:

|  | Disgorgement | Prejudgment Interest | Civil Penalty | Total[4] |
|---|---|---|---|---|
| Founder Companies (jointly and severally) | $51,357,035.69 | $3,866,207.36 | N/A | $55,223,243.05 |
| Nanban Ventures | $49,078.85 | $3,694.71 | N/A | $52,773.56 |

The SEC believes that these disgorgement figures represent a reasonable approximation of net profits the Founder Companies received from the alleged conduct as follows:

| $73,822,904.69 | Total amount of funds the Founders transferred from the Nanban Venture Funds to the Founder Companies |
|---|---|
| $40,413,602.71 | *Plus* total amount of funds raised from note investors[5] |
| $114,236,507.40 | |

---

[4] The ordered amounts owed by the Founder Companies and Nanban Ventures shall be "deemed satisfied" by the Receiver's collection efforts and distributions to investors, as the SEC is not seeking to have the Receiver pay the amounts collected to the SEC. However, the Receiver will be seeking to collect and distribute these amounts – and in addition the Nanban Venture Funds' assets as discussed below – in accordance with the provisions of the Agreed Order and a Court-approved plan of distribution.

[5] The SEC's Complaint alleges that Defendants raised funds from two classes of investors: (1) investors who purchased limited partnership units in the Venture Funds, and (2) investors who purchased promissory notes issued by the Founder Companies.

| $5,001,023.34 | *Less* amounts the Founder Companies distributed directly to the Founders (and which are included in the Founders' disgorgement amounts listed above in Section II.A.) |
|---|---|
| $23,683,900.67 | *Less* amounts the Founder Companies paid to the Nanban Venture Funds or for the benefit of assets held by the funds |
| $34,194,547.70 | *Less* amounts that the Founder Companies paid to note investors |
| **$51,357,035.69** | **Total** |

As to Nanban Ventures, which was an entity primarily used to pay operational expenses of the Nanban Venture Funds, the SEC contends that the disgorgement figure of $49,078.85 represents a reasonable approximation of distributions from the funds or their general partner entities to Nanban Ventures less such fund expenses (e.g., payroll, business software).[6]

### C.   Agreed Order Modifying Receivership Order and Asset Freeze

In addition to seeking to marshal and liquidate assets of the Founder Companies sufficient to satisfy the disgorgement and prejudgment interest amounts ordered against the Founder Companies, the Receiver will also marshal and liquidate the assets of the Nanban Venture Funds (e.g., interests in the Kalachandji and Gauranga Ranches), and then wind down the Nanban Venture Funds for the benefit of investors and in accordance with their respective limited partnership agreements. Thus, as a further part of the settlement, the Parties have agreed to entry of the Agreed Order submitted as Exhibit 11 hereto that, among other provisions, makes certain agreed modifications to the Receivership Order that the Receiver has determined are in the best interests of the receivership, including:

   1. Adding to the receivership the assets of the Nanban Venture Funds and 17 other related entities (collectively with Nanban Ventures, the "Nanban Venture

---

[6] The Founders are consenting to the relief set forth in the Founder Company Final Judgment and the Nanban Venture Final Judgment but are not agreeing to or taking a position on this paragraph or the previous paragraph regarding what the SEC states these disgorgement figures represent.

Entities");

2. Requiring Nanban Chola Land Holdings LLC to assign to Receivership Defendant Nanban Ventures Solid Assets LLC all of its ownership, profit sharing, or other interests in Receivership Defendant Henryetta Hills LLC and the tracts of land in Bastrop County, Texas known as the Greenport Land and described at <u>Exhibit 12</u> hereto;

3. Setting a deadline for the Receiver to file a plan of distribution and requiring that the plan include: (i) certain provisions that prioritize payments and timely distributions to investors, and (ii) waterfall provisions relating to how the Receiver will wind down the Nanban Venture Entities and distribute proceeds obtained from the liquidation of the fund assets and, separately, Founder Company assets;

4. Requiring the (i) Founders to cooperate in good faith to provide information to the Receiver and assist the Receiver in, among other things, collecting, marketing, and liquidating assets sufficient to satisfy disgorgement, prejudgment and post judgment interest, and penalty amounts ordered in the various final judgments; and (ii) in return suspends the Receiver's investigation into the Founder Defendants and the Founder Companies for a period of six months subject to such cooperation; and

5. Providing for a mutual release between the Receiver and the Founders upon full satisfaction of the ordered disgorgement and interest amounts.

As a further part of the settlement, the Parties have agreed that the Agreed Order shall include certain agreed modifications to the Asset Freeze, including that:

1. The Asset Freeze against the Founder Defendants' assets that are not Receivership Assets be permanently lifted with prejudice, unless otherwise ordered by the Court;

2. Acknowledging that lifting of the Asset Freeze expressly does not lift or impact the Asset Freeze, Injunction Against Interference, Stay of Litigation, or other protections set forth in the Receivership Order relating to the Receivership Assets (as defined therein and which shall include all interest in or assets owned or controlled by the Founder Companies and the Nanban Venture Entities);

3. Notwithstanding the foregoing, the Asset Freeze will not be lifted against the Founder Defendants' direct or indirect interests in that tract of land (a/k/a the "Hartlee Property") in Denton, Texas owned by HFRD TX LLC and described at <u>Exhibit 13</u> hereto, but the SEC and the Receiver will not oppose the sale of the Hartlee Property; provided that the sale and the use of proceeds conditions set forth in the Agreed Order are satisfied; and

4. All funds held in non-receivership entity Nanban Enterprises, LLC's account at Wells Fargo (xxxxx-8542) shall be transferred to a Receivership account designated by the Receiver and applied towards satisfying the Founder Companies' monetary liabilities.

### D.   Dismissal of Appeal

As a further part of the settlement and as consented to here and in the Agreed Order, the Founders have agreed that, upon the entry of the Agreed Order, the Founder Defendant Final Judgments, the Founder Company Final Judgment, and the Nanban Venture Final Judgment, the Founders will immediately dismiss with prejudice their pending appeal, *SEC v. Krishnan*, *et al.*,

No. 24-40291 (5th Cir.).

### III. CONCLUSION

For all the foregoing reasons, the Parties respectfully request that the Court enter the proposed Final Judgments and the Agreed Order.

Dated: January 23, 2025                                    Respectfully submitted,

*/s/ Keefe Bernstein*
Keefe Bernstein
Texas Bar No. 24006839
Jason P. Reinsch
Texas Bar No. 24040120
Direct Phone: (817) 900-2601
Securities and Exchange Commission
801 Cherry Street, Suite 1900
Fort Worth, TX 76102
bernsteink@sec.gov
reinschj@sec.gov

*Counsel for Plaintiff*

*/s/ Michael J. Edney (with permission)*
Michael J. Edney
Virginia Bar No. 48253
DC Bar No. 492024 (admitted to EDTX)
medney@huntonak.com
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue NW
Washington, DC 20037
Phone: (202) 955-1500

David Clouston
Texas Bar No. 00787253
(214) 741-3005
Sessions, Israel & Shartle, LLP
900 Jackson Street, Suite 440
Dallas, Texas 75202
dclouston@sessions.legal

*Counsel for Defendants Gopala Krishnan, Manivannan Shanmugam, and Sakthivel Palani Gounder*

*/s/ London England (with permission)*
Chris Davis
State Bar No. 24050483
London England
State Bar No. 24110313
GRAY REED
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:  (214) 954-4135
cdavis@grayreed.com
lengland@grayreed.com

*Counsel for Receiver Anthony Box*

## CERTIFICATE OF CONFERENCE

Counsel for the Plaintiff conferred with counsel for the individual Defendants and counsel for the Receiver, who have agreed to the relief sought herein.

*/s/ Keefe Bernstein*
Keefe Bernstein

## CERTIFICATE OF SERVICE

I certify that on January 23, 2025, I caused the foregoing to be electronically submitted with the clerk of court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court.

*/s/ Keefe Bernstein*
Keefe Bernstein
