UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>GOPALA KRISHNAN, MANIVANNAN SHANMUGAM, SAKTHIVEL PALANI GOUNDER, NANBAN VENTURES LLC, GSM ETERNAL LLC (A/K/A NORTHSTARS FINTECH), HIMALAYAN FINTECH LLC, and CENTUM FINTECH LLC (A/K/A SUNSHINES FINTECH),<br><br>Defendants. | C.A. No.: 4:23-CV-885-SDJ<br><br>Jury Trial Demanded |

**AGREED ORDER MODIFYING ASSET FREEZE AND RECEIVERSHIP ORDER AND ENTERING FINAL JUDGMENTS AGAINST DEFENDANTS**

WHEREAS, on November 30, 2023, the Court entered an Agreed Preliminary Injunction and Asset Freeze ("Asset Freeze"). [Dkt. No. 49]

WHEREAS, on March 7, 2024, the Court entered an Omnibus Order on Defendants' Motion to Dissolve or Modify Asset Freeze, Plaintiff's Motion for Appointment of Receiver, and Motions to Seal that, among other things, appointed Anthony Box as the Receiver ("Receivership Order"). [Dkt. No. 91]

WHEREAS, Plaintiff Securities and Exchange Commission ("SEC"), Defendants Gopala Krishnan, Manivannan Shanmugam, and Sakthivel Palani Gounder ("Founder Defendants"), and Anthony Box ("Receiver"), in his capacity as Receiver and on behalf of Defendants GSM Eternal LLC (a/k/a NorthStars FinTech), Himalayan FinTech LLC, and Centum FinTech LLC (a/k/a Sunshines FinTech) ("Founder Companies") and Defendant Nanban Ventures LLC ("Nanban Ventures"), have reached a settlement conditioned on the modification of certain orders entered in

this case, have contemporaneously herewith filed an Agreed Motion to Modify Asset Freeze and Receivership Order and for Entry of Final Judgments Against Defendants ("Agreed Motion"), and have agreed to the recitations and relief set forth herein.

WHEREAS, the Founder Defendants have, subject to the entry of the Agreed Order, consented to the entry of final judgments against them ("Founder Defendant Final Judgments") in the forms submitted with the Agreed Motion.

WHEREAS, the Receiver, in his sole capacity as the Receiver, and the Founder Defendants have, subject to the entry of the Agreed Order, consented to the entry of a final judgment against the Founder Companies ("Founder Company Final Judgment") and against Nanban Ventures ("Nanban Ventures Final Judgment") in the forms submitted with the Agreed Motion.

WHEREAS, the Founder Defendants have agreed, subject to the entry of the Agreed Order, the Founder Defendant Final Judgments, the Founder Company Final Judgments, and the Nanban Venture Final Judgment, to immediately dismiss with prejudice their pending appeal, *SEC v. Krishnan, et al.*, No. 24-40291 (5th Cir.).

WHEREAS, without admitting the allegations made in the SEC's Complaint, the Founder Defendants have agreed that this Court has jurisdiction over them and over the subject matter of this action and have agreed to waive an evidentiary hearing, the necessity of entering findings of fact and conclusions of law to support the Agreed Order, and any right to appeal this Agreed Order.

The Court, having considered the Agreed Motion, the parties' agreement, and all relevant pleadings and submissions, **GRANTS** the Agreed Motion.

**IT IS THEREFORE ORDERED:**

### I. MODIFICATION TO RECEIVERSHIP ORDER

1.      The Receivership Order, as modified by this Agreed Order, shall remain in full force and effect pending final disposition of this action or further order of the Court.

2.	In addition to the Receivership Defendants identified in the Receivership Order, this Court hereby takes exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated, of the following entities:

    a.	Nanban Venture Capital Fund I LP
    b.	Nanban Venture F1 GP LLC
    c.	Nanban Venture F1 MGMT LLC
    d.	Nanban Ventures AAA Fund LP
    e.	Nanban Ventures AAA GP LP
    f.	Nanban Ventures AAA MGMT LLC
    g.	Nanban Ventures Abundance Fund LP
    h.	Nanban Ventures Abundance GP LLC
    i.	Nanban Ventures Abundance MGMT LLC
    j.	Nanban Ventures Ganga Fund LP
    k.	Nanban Ventures Ganga GP LLC
    l.	Nanban Ventures Ganga MGMT LLC
    m.	Nanban Ventures Nile Fund LP
    n.	Nanban Ventures Nile GP LLC
    o.	Nanban Ventures Nil MGMT LLC
    p.	Nanban Ventures HUB LLC
    q.	Nanban Ventures Intangible Assets LLC
    r.	Nanban Ventures Solid Assets LLC
    s.	Nanban Ventures Unicorn LLC
    t.	Nanban Fund MGMT LLC
    u.	Nanban Management HC LLC
    v.	Henryetta Hills LLC

(collectively, the "Nanban Venture Entities"). The Founder Defendants have agreed that all Nanban Venture Entities will be included in the Receivership as "Receivership Defendants," and have represented to the Court that the Founder Defendants have authority to agree to the Nanban Venture Entities' inclusion in the Receivership on behalf of each of the Nanban Venture Entities, either through management, control, ownership, or agreement of their fellow shareholders.

3.	The Receivership Order is hereby modified to include the Nanban Venture Entities as "Receivership Defendants" and to include their assets as "Receivership Assets" as defined in, and for all purposes set forth in, the Receivership Order.

4.	Nanban Chola Land Holdings LLC has agreed, by separate document, to assign to

Receivership Defendant Nanban Ventures Solid Assets LLC all of its ownership, profit sharing or other interests in Receivership Defendant Henryetta Hills LLC and the tracts of land in Bastrop County, Texas known as the Greenport Land and described at Exhibit 12 to the Agreed Motion.

5. Absent further extensions granted by the Court, the Receiver's deadline to file a Plan of Distribution shall be six months following the entry of this Agreed Order. The Receiver may, however, at any time file a motion for approval of real property sales as outlined in the Receivership Order at Paragraphs 35-38.

6. Further, the Receiver's Plan of Distribution will include the following provisions:

   i. In consultation with the Founder Defendants and with Court approval of any real property sales, the Receiver will: (1) marshal and monetize the direct and indirect assets of Nanban Ventures LLC and the Nanban Venture Entities; (2) disburse them in accordance with the limited partnership agreements and other operative fund documents ("fund documents") of Nanban Ventures Capital Fund 1, LP, Nanban Ventures AAA Fund, LP, Nanban Ventures Abundance Fund, LP, Nanban Ventures Ganga Fund, LP, and Nanban Ventures Nile Fund, LP (collectively, the "Nanban Venture Funds"); and (3) wind down the Nanban Venture Funds.

   ii. Any share of received funds at the Nanban Venture Fund level to be disbursed to the Founder Defendants or their non-Receivership controlled entities under the terms of the fund documents will be: (1) first applied to satisfy any outstanding monetary liability ordered in the Founder Defendant Final Judgments; (2) second applied to satisfy any remaining disgorgement and prejudgment interest amounts ordered in the Founder Company Final Judgment; and (3) thirdly disbursed, if there are remaining amounts thereafter, to the Founder Defendants or their non-Receivership controlled entities in accordance with the terms of the fund documents. Net proceeds applied pursuant to Paragraph 5(iii) below will also be counted for purposes of this waterfall.

   iii. In consultation with the Founder Defendants and with Court approval of any real property sales, the Receiver will also marshal and monetize those Founder Companies' assets necessary to disburse net proceeds sufficient to satisfy the amounts of disgorgement and prejudgment interest ordered in the Founder Company Final Judgment and any outstanding monetary liability ordered in the Founder Defendant Final Judgments.

     - The Receiver will apply net proceeds as follows: (1) applied first to the disgorgement and prejudgment interest amounts ordered in the Founder Company Final Judgment; and (2) applied second to any

4

       outstanding monetary liability ordered in the Founder Defendant Final Judgments.

- For purposes of this section, net proceeds means proceeds from marshaling and monetizing the Founder Companies' assets after deducting the costs directly incurred through the particular sale in question (including payment of liens, appraisals, marketing, agents, taxes, and legal fees).

- All of the Receiver's and his Professional's fees and costs incurred after the entry of this Agreed Order will be split based on new matter numbers and the Receiver will make reasonable efforts to allocate them to the specific entity or entities that incurs them, subject to a motion asking the Court to approve such fees and the allocation thereof.

- The Receiver will disburse the net proceeds he collects pursuant to a Court-approved plan of distribution that seeks to maximize distributions to investors.

- Once the Receiver has collected net proceeds sufficient to disburse to investors the amounts of disgorgement and prejudgment interest ordered in the Founder Company Final Judgment and any outstanding amounts of monetary liability ordered in the Founder Defendant Final Judgments, the receivership over the Founder Companies will dissolve and those companies and their remaining assets (if any) will revert to the control of their pre-Receivership owners.

- Pursuant to the plan of distribution and the terms herein, the Receiver shall make quarterly distributions to investors in each quarter that the Receiver has at least $1,000,000 of funds available to distribute. The first distribution to investors shall occur no later than three months from the date of entry of a Court order approving the distribution plan, so long as the Receiver has at least $1,000,000 of funds available to distribute.

7.     The Receiver and Founder Defendants shall enter into a mutual, springing release that would release the Founder Defendants, their family offices, and the Founder Companies upon full satisfaction of the disgorgement and prejudgment interest amounts ordered in the Founder Company Final Judgment and the disgorgement, prejudgment and post judgment interest, and penalty amounts ordered in the Founder Defendant Final Judgments. The SEC would not oppose the release, but it would not be a release by the SEC and would have no impact on the obligations

under the Founder Defendant Final Judgments, Founder Company Final Judgment, or Nanban Venture Final Judgment.

8.   The Receiver agrees to suspend all investigation into the Founder Defendants and the Founder Companies for a period of six months from the date of entry of the Agreed Order. The Founder Defendants shall cooperate in good faith to provide information to the Receiver and assist the Receiver in, among other things, collecting, marketing, and liquidating assets sufficient to satisfy disgorgement, prejudgment and post judgment interest, and penalties. Should the Founder Defendants fail to cooperate during that six-month period, including by refusing to share, explain, or identify records or timely respond to requests from the Receiver or his Professionals, the Receiver reserves the right to file a motion seeking rescission of the suspension and the immediate right to investigate the Founder Defendants and the Founder Companies. The Receiver shall provide the Founder Defendants with notice of such perceived or actual non-cooperation and provide Founder Defendants with adequate time, but no less than 15 days, to attempt to cure the alleged shortcoming. If amounts sufficient to satisfy the disgorgement, prejudgment and post judgment interest, and penalty amounts ordered in the Founder Defendant and Founder Company Final Judgments, as applicable, have not been collected after the six-month period, the Receiver may in his discretion resume investigation of the Founder Defendants and the Founder Companies. Once amounts sufficient to satisfy the disgorgement, prejudgment and post judgment interest, and penalty amounts ordered in the Founder Defendant and Founder Company Final Judgments, as applicable, according to paragraphs (b)(ii) and (iii) above have been collected, the Receiver would permanently and with prejudice, unless otherwise ordered by the Court, terminate any investigation of the Founder Defendants and the Founder Companies. Notwithstanding the foregoing, the Receiver is not agreeing to suspend its investigation of Nanban Ventures LLC, the Nanban Venture Entities, or their assets identified in paragraph (1) above. However, during the

six-month suspension, any further investigation by the Receiver of Nanban Ventures LLC or the Nanban Venture Entities shall not include investigation or subpoena of, litigation against, or other coercive inquiry of the Founder Defendants, their family offices, and the Founder Companies. The Founder Defendants shall cooperate in good faith to provide information to the Receiver and assist the Receiver in operation of Nanban Ventures LLC and the Nanban Venture Entities.

## II. MODIFICATION TO ASSET FREEZE ORDER

9. The Asset Freeze against the Founder Defendants' assets that are not Receivership Assets is hereby permanently lifted with prejudice, unless otherwise ordered by the Court. This Agreed Order expressly does not lift or impact the Asset Freeze, Injunction Against Interference, Stay of Litigation or other protections set forth in the Receivership Order relating to the Receivership Assets (as defined therein and which include all interest in or assets owned or controlled by the Founder Companies, Nanban Ventures LLC, and the Nanban Venture Entities). *See, e.g.*, Receivership Order at Paragraphs 3 and 27-32.

10. Notwithstanding the foregoing, the Asset Freeze will, pending further order of the Court, not be lifted and shall remain in place against the Founder Defendants' direct or indirect interests in that tract of land (a/k/a the "Hartlee Property") in Denton, Texas owned by HFRD TX LLC and described at Exhibit 13 to the Agreed Motion, and the Asset Freeze may be filed as a lis pendens in the county records where the Hartlee Property is located.

11. The SEC and the Receiver will agree not to oppose a motion to lift the Asset Freeze to allow the sale of the Hartlee Property; provided that: (a) the Founder Defendants copy the SEC's counsel and the Receiver's counsel on all title company correspondence and updates and provide documentation sufficient to demonstrate that the Hartlee Property is being sold for fair market value in an arms-length transaction and that all lien-holders that precede the SEC are bona fide; (b) the Court approves, upon motion, the lifting of the Asset Freeze for such sale to go to closing;

(c) all or a portion of the sales proceeds due to the Founder Defendants or entities they control is first paid to the Receiver to the extent necessary to return the principal of any funds provided by the Founder Companies for the purchase price or for the benefit (e.g., debt service) of the Hartlee Property that has not been previously reimbursed to the Founder Companies, and then to satisfy any outstanding monetary liabilities ordered in the Founder Defendant Final Judgments; and (d) the remaining proceeds are reverted to the trust account of the Founder Defendants' counsel at Hunton Andrews Kurth LLP.  If the Receiver has been discharged and the Founder Defendants still owe amounts due under the Founder Defendant Final Judgments, then the amounts due to the Founder Defendants or their entities that they directly or indirectly control shall be paid to the SEC to be applied towards their obligations under the Founder Defendant Final Judgments and then the balance remitted to the trust account of the Founder Defendants' counsel at Hunton Andrews Kurth LLP.

12. In addition, all funds held in non-receivership entity Nanban Enterprises, LLC's account at Wells Fargo (xxxxx-8542) shall be transferred to a Receivership account designated by the Receiver and applied towards satisfying the disgorgement and prejudgment interest ordered in the Founder Company Final Judgment.

13. The Founder Company Final Judgment orders that the Founder Companies are liable, jointly and severally, for disgorgement of $51,357,035.69, together with prejudgment interest thereon in the amount of $3,866,207.36, for a total of $55,223,243.05, but further orders that the Receiver's obligation to pay these disgorgement and prejudgment interest amounts will be "deemed satisfied" by the Receiver's collection efforts and distributions to investors.  References throughout this Agreed Order (including, but not limited to, at Paragraphs 6(ii), 6(iii), 7, 8, 10, and 12) to the Receiver applying amounts "to satisfy," "towards satisfying," or "in satisfaction of" of the disgorgement and prejudgment interest amounts ordered in the Founder Company Final

Judgment refer to the Receiver collecting funds equal to the $55,223,243.05 ordered in the Founder Company Final Judgment, irrespective of the fact that such ordered disgorgement and prejudgment interest is being deemed satisfied. For avoidance of doubt, the deemed satisfied component of the Founder Company Final Judgment does not affect in any way the Receiver's collection of and accounting for funds to cover the $55,223,243.05 disgorgement and prejudgment interest ordered in the Founder Company Final Judgment and applying such amounts to satisfy such disgorgement and prejudgment interest amounts under the distribution and other provisions set forth in this Agreed Order.

### III. ENTRY OF FINAL JUDGMENTS

By separate document, the Clerk of Court is directed to enter the Founder Defendant Final Judgments, the Founder Company Final Judgment, and the Nanban Venture Final Judgment in the forms submitted with the Agreed Motion.

**So ORDERED and SIGNED this 4th day of February, 2025.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE